

**David M. Siegal**
212 692 6281
dmsiegal@mintz.com

Chrysler Center
666 Third Avenue
New York, NY 10017
212 935 3000
mintz.com

November 20, 2020

**Via ECF**
The Honorable Victor Marrero
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: *United States, et al., ex rel. SW Challenger, LLC v. eviCore healthcare MSI, LLC*, No. 19-2501

Dear Judge Marrero:

On behalf of eviCore healthcare MSI, LLC (eviCore), we write pursuant to Rule II.B.2 of your *Individual Rules of Practice* to explain why, after completion of the procedures contemplated in Rule II.B.1, eviCore's Motion to Dismiss the Second Amended Complaint (SAC) is warranted.

Relator SW Challenger, LLC (SW Challenger or Relator) filed its First Amended Complaint (FAC) under the *qui tam* provisions of the False Claims Act on May 21, 2020 under seal. On June 10, 2020, the Court unsealed the FAC. (ECF No. 6). The U.S. Department of Justice, through the U.S. Attorney's Office for the Southern District of New York, did not intervene in the case, as permitted under the False Claims Act.

By letter on September 9, 2020, SW Challenger sought an extension to serve eviCore with the FAC and informed the Court of its intention to move to amend the FAC. (ECF No. 10). The Court granted Relator's request for extension to serve eviCore and Relator filed a motion to amend the FAC on September 22, 2020. (ECF No. 11). On September 23, 2020, the Court granted SW Challenger's motion to amend and SW Challenger filed its SAC. (ECF Nos. 14, 15). At that time, eviCore had not been served, and thus did not participate in these proceedings.

eviCore intends to file a Motion to Dismiss the SAC on the grounds that it fails to plausibly allege any violation of the False Claims Act, and fails to state with particularity the facts of the purported fraud, as required by Federal Rules of Civil Procedure (FRCP) 8(a) and 9(b). eviCore also intends to raise with the Court that the two "Jane Doe" parties, added without leave of the Court (or consent of eviCore) in the SAC, are not permitted as anonymous parties, without satisfying a stringent judicial standard, and should be stricken under FRCP 10 (parties must be named). Further, eviCore does not have a copy of the initial Complaint filed in this case, which may be still under seal inadvertently (the *qui tam* provisions of the False Claims Act require the Complaint to be filed under seal, and remain sealed only for 60 days, plus any extensions granted for good cause). We expect that this could be resolved easily with SW Challenger's agreement, and we are checking with the U.S. Attorney's Office to make sure they have no objection. If not, eviCore in the near future will need to file a motion with the Court to address this.

To raise these issues prior to filing, as set out in the Court's rules eviCore sent SW Challenger a letter identifying these deficiencies and issues on November 12, 2020. (ECF No. 17, attached hereto as Exhibit A). Counsel for the parties conferred regarding eviCore's pre-motion letter



on November 17, 2020. During this conference, counsel did not reach a resolution regarding the SAC's deficiencies, and SW Challenger made no indication that it intended to voluntarily dismiss the SAC. Counsel also discussed, but did not resolve, eviCore's view that "Jane Doe 1" and "Jane Doe 2" are improper parties, and that the initial Complaint in this case should be unsealed. On November 19, 2020, SW Challenger responded to eviCore's letter and did not agree to strike the pseudonymous parties (or offer any substantial justification to excuse the normal requirement that parties must be named for the Court to consider), and did not consent to the unsealing of the Complaint. *See* ECF No. 18 (attached hereto as Exhibit B). SW Challenger indicated that it intended to oppose eviCore's Motion to Dismiss the SAC. *See id.* Thus, eviCore's Motion to Dismiss the SAC is warranted.

Unless Your Honor advises otherwise, eviCore intends to file its Motion to Dismiss SW Challenger's SAC on Monday, November 23, 2020, pursuant to the deadline to do so under the FRCP. eviCore is available for a conference on the issues whenever it is convenient for the Court.

Sincerely,

David M. Siegal
Member


cc: All Counsel of Record (Via ECF)
Laurence J. Freedman (Via Email, pro hac vice application forthcoming)
Brian P. Dunphy (Via Email, pro hac vice application forthcoming)


105717140

# EXHIBIT A



**David M. Siegal**
212 692 6281
dmsiegal@mintz.com

Chrysler Center
666 Third Avenue
New York, NY  10017
212 935 3000
mintz.com

**Via Email**

November 12, 2020

David S. Stone
Stone & Magnanini LLP
100 Connell Drive, Suite 2200
Berkeley Heights, NJ 07922

Stephen A. Weiss
Seeger Weiss LLP
77 Water Street, 8th Floor
New York, NY 10005

Re:  *United States, et al., ex rel. SW Challenger, LLC v. eviCore healthcare MSI, LLC*, No. 19-2501

Dear David and Stephen:

On behalf of eviCore healthcare MSI, LLC (eviCore), we write pursuant to Rule II.B.1 of Judge Marrero's Individual Practices to set forth the basis of eviCore's anticipated Motion to Dismiss SW Challenger, LLC's (SW Challenger or Relator) Second Amended Complaint (SAC). Below, we identify the reasons that the claims in the SAC for False Claims (Count I), False Statements (Count II), Reverse False Claims (Count III), Conspiracy (Count IV), State-law violations (Counts V-XX), and Retaliation (XXI-XXII) fail the pleading requirements of Federal Rules of Civil Procedure 8(a) and 9(b) and should be dismissed with prejudice. In addition, SW Challenger's causes of action are barred by the FCA's public disclosure bar, and the FCA's statute of limitations precludes any conduct before May 2014.

*First*, the SAC fails plausibly to allege that eviCore caused *any* claim for clinical services to be submitted to CMS by any Medicare Advantage Organization (MAO). To establish a False Claims Act violation, Relators, as a threshold matter, must allege such a claim was submitted to CMS. In particular, the SAC alleges that as a result of eviCore's "auto-approval" processes, eviCore caused MAOs to submit claims for services that "were going to be paid ultimately by government healthcare programs." SAC ¶ 63. Yet, Relators cannot plausibly allege a connection of eviCore's allegedly excessive approval of *services*—which eviCore strongly disputes—to any claim that any eviCore health plan client actually submitted to the government. Indeed, SW Challenger *cannot* allege such a connection because CMS's payments to MAOs depend on member diagnoses, *not* the amount of services provided to a specific beneficiary. *See* SAC ¶ 4. Therefore, even assuming SW Challenger's allegations are true (and they are not), the SAC does not and cannot plausibly allege that eviCore's purported approval of too many clinical services caused MAOs to submit *any claims*, much less false claims, to the government.  *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996) ("While the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice.").

*Second*, the SAC does not identify any terms of any contracts with health plans that eviCore purportedly breached. The SAC makes the conclusory assertion that by using "auto-approval" procedures, (1) eviCore "failed to satisfy its contractual requirements [with MAOs] and thus failed to provide necessary medical review functions for CMS and the Qui Tam States," (SAC ¶ 31) and (2) as a result of this failure, that eviCore provided "worthless" prior authorization services to MAOs who contract with CMS to perform this function. *Id.* ¶ 32. But the SAC *never once* identifies a specific contract, much less a single term or requirement within any contract, between eviCore and any MAO

**MINTZ**

November 12, 2020
Page 2



that eviCore allegedly violated. *United States ex rel. Ladas v. Exelis, Inc.,* 824 F.3d 16, 26- 27 (2d Cir. 2016) (hypotheses, conclusory statements, and assertions "not supported by particularized allegations of fact" do not satisfy Rule 9(b)).

Additionally, the SAC asserts no plausible, particular facts to support the conclusory claim that eviCore provided "worthless services" to its health care plan clients, or to the government. eviCore is a leading utilization management company that enables better outcomes for patients, providers and health plans. SW Challenger does not—and cannot—meet the high bar requiring proof that "no service[s] at all" were performed under any contract with an MAO, much less that "no services" were performed from the perspective of the federal program. *See United States ex rel. Kolchinsky v. Moody's Corp.,* No. 12-cv-1399, 2018 U.S. Dist. LEXIS 41117, at *14 (S.D.N.Y. Mar. 13, 2018) (relator failed to demonstrate that defendant's ratings service was so deficient that it was akin to no service at all, where he acknowledged that *only some* of defendant's ratings were erroneous).

*Third*, the SAC fails to plausibly allege the elements for its "reverse" false claims count. The SAC fails to allege that eviCore received any money from any federal or state health care program, or that eviCore had any obligation to pay money to the government. *United States ex rel. Foreman v. AECOM Gov't Servs.*, 454 F. Supp. 3d 254, 268 (S.D.N.Y. Apr. 13, 2020) ("A complaint that 'makes no mention of any financial obligation that the [defendant] owed to the government' and 'does not specifically reference any false records or statements used to decrease such an obligation' must be dismissed.").

*Fourth*, the SAC's conspiracy claim fails because the SAC alleges no agreement between eviCore and any other party to violate the FCA. Accordingly, pursuant to the intracorporate doctrine, this count must be dismissed. *Reich v. Lopez*, 38 F. Supp. 3d 436, 463 (S.D.N.Y. 2014) ("Under the intracorporate conspiracy doctrine, the officers, agents, and employees of a single corporate entity, each acting within the scope of [his] employment, are legally incapable of conspiring together.").

*Fifth*, the SAC's state-law claims also fail for the same reasons. The SAC lacks plausible state-specific allegations to support state-law violations. For example, the SAC fails to specify which states contracted with which Medicaid Managed Care Organizations (MCOs), let alone which of those Medicaid MCOs subcontracted with eviCore, and fails to provide any specifics about the terms of those subcontracts. *Lab. Corp. of Am. Holdings*, No. 1:07-cv-05696, 2015 U.S. Dist. LEXIS 155601, at *21 (S.D.N.Y. Nov. 17, 2015) ("Where Relator has not sufficiently pled its allegations in any state, it would be illogical to allow those deficient allegations to support state-law claims.").

*Sixth*, the SAC is also barred by the public disclosure doctrine. The "public disclosure" bar applies in this case because the SAC allegations are "substantially the same" as allegations disclosed in a previously filed federal civil case in which the government was a party, and from information previously published widely in the news media. We refer you (and will refer the court, ultimately) to (1) the CareCore complaint filed under the FCA on May 11, 2017[1] and (2) the federal press announcement of the CareCore settlement under the FCA in May 2017[2] as well as related press

---

[1] *See United States ex rel. Miller v. CareCore National LLC*, 13-cv-01177-RJS (S.D.N.Y.).
[2] *See* SAC ¶ 53 ("Acting U.S. Attorney Announces $54 Million Settlement of Civil Fraud Lawsuit Against Benefits Management Company for Improper Authorization Of Medical Procedures, (2017), https://www.justice.gov/usao-sdny/pr/acting-us-attorney-announces-54-million-settlement-civil-fraud-lawsuit-against-benefits.").

**MINTZ**

November 12, 2020
Page 3



coverage. Because of the prior public disclosures, SW Challenger's case is barred and must be dismissed unless it is an "original source" of the information.

Plaintiff SW Challenger, an LLC, simply cannot be an original source, since it has no independent knowledge of anything. Put another way, an entity cannot have knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions. *See Federal Recovery Services, Inc. v. U.S.*, 72 F.3d 447, 452 (5th Cir. 1996) (dismissing action where corporate relator did not have "direct and independent knowledge" to qualify as "original source"); *United States ex rel. Precision Co. v. Koch Industries, Inc.*, 971 F.2d 548, 552 (10th Cir. 1992).

The public disclosure bar to the SAC, and ground for dismissal, is not cured by the purported attempt in the SAC to add "Jane Doe 1" and "Jane Doe 2" as parties. Furthermore, as a matter of law, the "Jane Doe" plaintiffs cannot be anonymized without basis. This court has made clear that the use of anonymous *qui tam* relators is inconsistent with the statutory purpose of the FCA's *qui tam* provisions. *See e.g. United States v. UCB, Inc.,* No. 14-cv-2218, 2017 U.S. Dist. LEXIS 30725, at *10 (S.D.N.Y. Feb. 24, 2017) (denying motion to proceed under pseudonym in FCA action where public "interest in knowing the party's identity" outweighed relator's speculative fear of employment retaliation).

Second Circuit law also strongly disfavors permitting claims to be brought under pseudonyms, and thus "Jane Doe 1" and "Jane Doe 2" are not valid relators, and should be stricken. *Doe v. N.Y. State Dep't of Health*, No. 1:20-cv-04817, 2020 U.S. Dist. LEXIS 170560, at *3 (S.D.N.Y. Sept. 17, 2020) (citing *United States v. Pilcher*, 950 F.3d 39, 45 (2d Cir. 2020) ("[P]seudonyms are the exception and not the rule, and a party seeking to receive the protections of anonymity . . . must make a case rebutting the presumption of disclosure."). The SAC articulates no basis for permitting two former employees to proceed anonymously.

*Finally*, the statute of limitations bars all claims prior to May 21, 2014. The SAC reasonably relates back to the conduct alleged in the FAC filed on May 21, 2020, and thus the six-year statute of limitations extends to May 21, 2014. Because the initial complaint was filed under seal in this matter, was not provided to eviCore, and remains under seal today, eviCore is precluded from ascertaining whether the SAC relates back to the allegations in the initial complaint under Rule 15(c)(1)(B). We request that Relators stipulate to a Motion to Unseal the Initial Complaint. If Relators will not stipulate to the unsealing of the initial complaint, eviCore will file a Motion to Unseal the Initial Complaint concurrently with its Motion to Dismiss. *See* 31 U.S.C. § 3730(b).

Relators' two retaliation claims also fail. The failure of the SAC to identify Jane Does 1 and 2 deprives eviCore of the ability to defend itself. Further, the SAC fails to allege that eviCore took any adverse employment action against the unidentified plaintiffs, who as the SAC concedes, voluntarily resigned. *Id.* ¶ 135. It is well settled that minor disruptions in the workplace, including "petty slights" or "minor annoyances" such as the productivity requirements or verbal warnings alleged here (*id.* ¶¶ 148-49, 162), fail to qualify. *See, e.g., Hiralall v. Sentosacare, LLC*, No. 13 Civ. 4437, 2016 U.S. Dist. LEXIS 35781, at *38 (S.D.N.Y. Mar. 18, 2016). The SAC further fails to allege any facts to suggest that eviCore took any adverse employment action "because of" any allegedly protected conduct.

For these reasons, among others, SW Challenger's SAC should be dismissed, for the reasons outlined above.

**MINTZ**

November 12, 2020
Page 4



Sincerely,

David M. Siegal
Member


cc:   Hon. Victor Marrero (Via ECF)
      All Counsel of Record (Via ECF)
      Laurence J. Freedman (Via Email, pro hac vice application forthcoming)
      Brian P. Dunphy (Via Email, pro hac vice application forthcoming)


105149067





November 19, 2020

**BY EMAIL**

Laurence J. Freedman, Esq.
David M. Siegel, Esq.
Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
701 Pennsylvania Ave., NW
Suite 900
Washington, DC 20004
LFreedman@mintz.com
DMSiegal@mintz.com

*Re: United States, et al., ex rel. SW Challenger, LLC v. Evicore HealthCare et al.*
*Case No. 19-2501*

Dear Mr. Freedman and Mr. Siegel:

      We write pursuant to Judge Marrero's local rules in response to your November 12th pre-motion letter and in furtherance of our video conference earlier this week.

      As a preliminary matter, we continue to discuss two issues which we believe may be resolved without the need for motion practice. The first is the unsealing of the initial complaint in this matter which was not unsealed by the Court's June 10, 2020 unsealing order. We discussing this issue with our clients and will get back to you before Monday of next week as to whether we have any objection to such unsealing. As I mentioned to you on the call, we believe that your suggestion that the Defendants could move to dismiss certain claims based on statutes of limitation is premature and not consistent with the law of this circuit. There is no question that the Second Amended Complaint (SAC) was filed within the applicable statutes of limitations and cannot be dismissed based on that ground. If anything, your point goes to the temporal scope of damages available, not whether the operative complaint's causes of action may be dismissed in their entirety. We also pointed out to you that recent case law supports the proposition that the Relators may avail themselves of the 10-year statute of limitations available to the government. All of these issues are highly fact intensive and not appropriate for a motion to dismiss. However, we believe if we can resolve the unsealing issues, that may resolve the issue.

      The second issue that we discussed was the fact that the complaint currently named the two Relators as the original sources in this case as Jane Doe 1 and 2. This was done to protect their identities as they are still working in the healthcare industry and therefore prone to Defendant's substantial influence within the industry. As we further explained during our conference, it is our collective experience that relators who continue to work in the industry that is the subject of their whistleblowing are routinely and viciously subjected to black-balling and other harassment as a result of coming forward with their allegations of wrongdoing (even when their allegations are borne out in litigation). We would agree to provide you and your client with

Laurence Freedman, Esq.
David Siegel, Esq.
November 19, 2020
Page 2

the names of the Relators if your client would allow the Relators to remain under seal for the present time with the understanding that if it was necessary to unseal their names in the future, we would join issue with you that time. In other words, we would agree to promptly disclose the Relators' identities pursuant to a protective order that would expressly preserve your client's future right to seek the public disclosure of those identities.

With respect to your remaining claims, as we discussed, we believe your assertion that the SAC does not satisfy Rule 9(b) is without merit. Numerous complaints alleging wide-spread schemes of healthcare fraud with less detail than that contained in the SAC have been approved by the Courts and found to satisfy Rule 9(b). *See, e.g.*, *United States v. Huron Consulting Grp.*, No. 09-cv-1800, 2011 WL 253259, at *2–3 (S.D.N.Y. Jan. 24, 2011) (holding that complaint in a False Claims Act action for healthcare fraud satisfied Rule 9(b) where it alleged facts constituting "circumstantial evidence" of false claims). Your suggestion that a complaint which sets forth in detail a fraudulent scheme and identifies with detail the elements of that scheme needs to provide every document referenced in the complaint or describe in detail every contract mentioned, is inconsistent with the law of this circuit. *See, e.g.*, *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004) (providing that, under Rule 9(b), a complaint need only "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent").

Your argument about worthless services is equally without merit. The claim in the complaint, which is highly factually based and must be considered true for purposes of the motion to dismiss, is that eviCore which was hired specifically to control healthcare costs was engaging in conduct which resulted in the opposite; i.e. it wasn't doing its job and was not providing the services that the government understood it would be providing. As you point out, under strikingly similar facts, the government extracted a multi-decamillion dollar settlement from CareCore, a predecessor of eviCore.

As to reverse false claims, the SAC alleges that eviCore was paid for services that it did not render and therefore is holding money illegitimately paid. *See, e.g.*, SAC ¶¶ 27, 56–58. This is sufficient to state a reverse False Claims Act claim. *See, e.g.*, *Kane ex rel. United States v. Healthfirst, Inc.*, 120 F. Supp. 3d 370, 394 (S.D.N.Y. 2015) ("[T]o retain—to not return—an overpayment constitutes a violation of the [False Claims Act].").

Regarding the conspiracy claim, we believe the complaint adequately alleges that healthcare providers knowingly conspired with eviCore to provide medically unnecessary services which the government paid for. It is not required under the law that all conspirators to an alleged conspiracy be defendants in the case. *See, e.g.*, *United States ex rel. Mikes v. Straus*, 84 F. Supp. 2d 427, 432 (S.D.N.Y. 1999) (noting that a plaintiff may bring a conspiracy to defraud claim under the False Claims Act where "the defendant conspired with one or more persons to get a false or fraudulent claim allowed or paid by the United States").

Laurence Freedman, Esq.
David Siegel, Esq.
November 19, 2020
Page 3

      With respect to your argument regarding state law claims, the complaint sets forth a national fraudulent scheme which impacts healthcare practitioners and MCOs throughout the country. Specific States are set forth and the allegations in question clearly reach every State included as a Plaintiff. *See, e.g.*, SAC ¶¶ 195, 204, 213. This is no different than many other FCA national healthcare schemes that have been alleged in New York. Your reliance on one recent S.D.N.Y. case is not a binding precedent and we believe we will easily distinguish it if you file your motion.

      Your sixth argument is plainly mistaken: that a previous false claims case related to a different time period and a predecessor company that was brought by current counsel is somehow a public disclosure of a later previously undisclosed fraud relating to different claims and different medical departments by a successor company. We note that you cite no case law to support this proposition as this legal doctrine would essentially immunize a previous fraudster from being prosecuted for a later fraud simply because they had previously committed fraud. We note in any event that, as is set forth in the complaint, that the two plaintiffs have direct personal knowledge of the allegations and qualify as original sources.

      Finally, as to the retaliation claims, the SAC sufficiently alleges that eviCore took adverse action against Jane Does 1 and 2, including the imposition of "unreasonable and uncommon productivity requirements," SAC ¶ 148, and the denial of managerial promotions, *id.* ¶ 155. Such actions constitute retaliation under the False Claims Act, as they "might have dissuaded a reasonable worker from engaging in the protected conduct." *Difiore v. CSL Behring, U.S., LLC*, 171 F. Supp. 3d 383, 393 (E.D. Pa. 2016) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)); *cf. also Mandell v. County of Suffolk*, 316 F.3d 368, 383 (2d. Cir. 2003) (holding that the denial of a promotion constitutes adverse action for purposes of a First Amendment retaliation claim).

      The foregoing, respectfully, is a summary of our reasons why we believe you will be unsuccessful in your motion to dismiss. We, of course, raise the right to raise additional arguments, if and when you file a motion.

      Very Truly Yours,

      *s/Stephen A. Weiss*
      Stephen A. Weiss

cc:    Hon. Victor Marrero (Via ECF)
       All Counsel of Record (Via ECF)
       David S. Stone, Stone Magnanini (via email)